**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PAUL LOPEZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 11 C 6657** |
| | ) | |
| **CALUMET RIVER FLEETING, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Paul Lopez has sued Calumet River Fleeting, Inc. (Calumet). He asserts a claim

under the Jones Act and common law claims for Calumet's failure to provide a

seaworthy ship and to enforce his right to receive maintenance and cure from Calumet.

Lopez has moved for a preliminary injunction reinstating maintenance and cure and

increasing the amount of maintenance. For the reasons stated below, the Court grants

Lopez's motion in part and denies it in part.

**Background**

Lopez alleges that he worked for Calumet as a deck hand on the tugboat

"Krista." On June 10, 2009, while Lopez was working on the boat, he injured his left

leg. The injury left him unable to work as a deck hand.

After the accident, Calumet paid Lopez maintenance and cure. Under maritime

law, "maintenance" refers to food and lodging, and "cure" involves medical care. *See*

*Atlantic Sounding Co. v. Townsend*, 557 U.S. 404, 129 S. Ct. 2561, 2569 (2009).

Calumet provided regular payment of fifteen dollars per day for Lopez's housing and food and paid for all of his medical bills. Calumet also voluntarily paid Lopez advance wages, intending to deduct the wages from whatever recovery Lopez earned for his injuries. The advance wages were approximately $696 every two weeks.

Lopez filed this suit in September 2011 to recover damages for his leg injury. On February 16, 2012, Calumet informed Lopez that it had concluded it no longer had to pay maintenance and cure and that it would be ending those payments as well as the advance wage payments. Calumet says that it was entitled to terminate the maintenance and cure payments because it learned from Lopez's medical providers that he had reached maximum medical improvement and was no longer entitled to maintenance and cure by law.

Lopez filed a motion requesting that the Court order Calumet to resume paying maintenance and cure. As the parties were briefing the motion, they also discussed Lopez's treatment and the opinions of his doctors. Calumet came to the conclusion that it should reinstate maintenance and cure, and it did so. It did not resume making the voluntary advance wage payments.

### Discussion

Although Calumet has reinstated Lopez's maintenance and cure payments, Lopez argues that the Court should order Calumet to increase the maintenance payments and pay him attorney's fees and punitive damages for interfering with the maintenance and cure.

> To win a preliminary injunction, a party must show that it has (1) no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied and (2) some likelihood of success on the merits. If

the moving party meets these threshold requirements, the district court weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied.

*Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011) (citations omitted).

"Maintenance . . . is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service." *Vaughn v. Atkinson*, 369 U.S. 527, 531 (1962). Courts interpret liberally the duty of employers to provide maintenance and cure, and "[w]hen there are ambiguities or doubts, they are resolved in favor of the seaman." *Id.* at 532. An employer who willfully and wantonly disregards its maintenance and cure obligation can be liable for punitive damages and the attorney's fees incurred by the employee to obtain maintenance and cure. *Atl. Sounding Co.*, 557 U.S. 404, 129 S. Ct. at 2575; *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 382–83 (5th Cir. 2012).

Lopez may be entitled to attorney's fees and punitive damages, but his entitlement is a matter to be addressed at summary judgment or trial, not on a motion for a preliminary injunction. *See Manderson*, 666 F.3d at 382–83 (considering entitlement to attorney's fees after bench trial); *Rose v. Miss Pacific, LLC*, No. 3:09-cv-00306-ST, 2012 WL 75028, at *8–9 (D. Or. Jan. 10, 2012) (granting summary judgment on claim for punitive damages); *Moore v. Sally J*, 27 F. Supp. 2d 1255, 1262 (W.D. Wash. 1998) (finding that plaintiff was entitled to attorney's fees after a bench trial). Thus, the Court denies Lopez's motion to the extent that it seeks attorney's fees and punitive damages at this time.

Lopez also argues that he is entitled to a higher level of maintenance payments than the fifteen dollars per day that Calumet provides. He presents evidence that his expenses for food and housing are more than that. Calumet disputes only the likelihood of success on the merits prong of the preliminary injunction standard, arguing that the amount of maintenance it pays is reasonable.

The Seventh Circuit does not appear to have established a standard for determining the amount of maintenance to which an employee is entitled. Calumet argues that "[m]aintenance is the equivalent of the food and lodging to which the seaman is entitled while at sea," *Cox v. Dravo Corp.*, 517 F.2d 620, 623 (3d Cir. 1975) (en banc), and that Lopez's actual expenses are thus irrelevant.

The Court, however, finds more persuasive the analysis of *Hall v. Noble Drilling (U.S.) Inc.*, 242 F.3d 582 (5th Cir. 2001). There, the court recognized that the traditional rule was that a seaman was entitled to enough maintenance to give him the equivalent of the food and lodging he would have received aboard his ship. *Id.* at 586–87. The court noted, however, that the traditional rule made little sense in modern times because many seamen do not live and eat on their vessel yet are still entitled to maintenance if injured, and because in many other cases lodging and food on land is not directly comparable to that aboard a ship. *Id.* at 587. The court concluded:

> Instead, the references to a seaman's shipboard food and lodging serves to define the amount of maintenance as no more and no less than the reasonable costs of subsistence the seaman has incurred while recuperating on land. This breaks down into two components: the reasonable cost of food and lodging for a seaman living alone, and the actual expense for food and lodging that the seaman has incurred.

*Id.* at 587. The court held that judges analyzing the proper level of maintenance should

determine the seaman's actual food and lodging expenses and award maintenance in that amount if reasonable. *Id.* at 590.

Lopez has provided a table of his expenses. Pl. Reply, Ex. 1 at 3; *see Nichols v. Weeks Marine, Inc.*, 513 F. Supp. 2d 627, 638–39 (E.D. La. 2007) (burden of production for plaintiff to show maintenance is light; testimony as to cost of food and housing is sufficient). The table includes mortgage payments and expenses for electricity, gas, water, and groceries, all of which are elements of the lodging and food that comprise maintenance. Pl. Reply, Ex. 1 at 3; *Hall*, 242 F.3d at 589 & n.31. The table, however, also contains expenses such as telephone bills, cable television and internet bills, car insurance, and child support, which do not constitute food and lodging expenses. Pl. Reply, Ex. 1 at 3. These expenses are not appropriately included in the calculation of maintenance. *See Hall*, 242 F.3d at 585 (upholding district court maintenance award that expressly excluded telephone, automobile costs, and the cost of supporting children).

Lopez's evidence indicates that he lives with Karen Kijewski and that the mortgage and utility bills are in her name. Pl. Reply, Ex. 1 at 2, 4, 8–9. Lopez's monthly expenses for groceries must be prorated, because maintenance provides only for the seaman and not for others with whom he resides. *Hall*, 242 F.3d at 589. Accordingly, Lopez's household's reported monthly grocery express must be divided by two. The Court concludes that the mortgage and utility expenses likewise must be divided by two, because, according to the written statement of Kijewski, Lopez is obligated to pay only half of those bills. Pl. Reply, Ex. 1 at 2; *cf. Hall*, 242 F.3d at 589

(declining to prorate housing costs when seaman who lived with family was nevertheless obliged to pay entire cost of rent).  Half of Lopez's household's average monthly expenses is $888.04, and thus his annual expenses are $10,656.42.  Based on this annual rate, Lopez's expenses are $29.20 per day in a 365-day year, almost twice the maintenance Calumet is currently paying.  *See* Pl. Reply, Ex. 1 at 3.

Calumet does not argue that a maintenance payment of $29.20 would be unreasonable but rather contends only that its payment of fifteen dollars is reasonable. A injured seaman, however, is entitled to his actual food and lodging expenses if they are reasonable.  *See Hall*, 242 F.3d at 590.  "A court may take judicial notice of the prevailing rate [of maintenance] in the district," but there are few cases discussing the proper amount of maintenance in this district.  *Id.*  Courts in Illinois have approved of maintenance of $32.86 per day in 1998 and $41.14 per day in 2010.  *Kohlhaas v. U.S. United Barge Line, LLC*, No. 08-CV-0239-MJR-PMF, 2010 WL 3211149, at *22 (S.D. Ill. Aug. 13, 2010); *Moreno v. Grand Victoria Casino*, No. 98 C 336, 1998 U.S. Dist. LEXIS 14306, at *2 (N.D. Ill. Sept. 4, 1998).  In *Hall*, a case arising out of Mississippi, the court concluded that maintenance payments of $30.50 and $31.50 were reasonable for lodging and food in 2001.  *Hall,* 242 F.3d at 591; *see Nichols*, 512 F. Supp. 2d at 639 (finding thirty dollar per day maintenance payment reasonable in Louisiana in 2007). The Court concludes that the limited evidence from other cases indicates that $29.20 is a reasonable daily maintenance rate.

Calumet argues that its fifteen dollar per day maintenance is reasonable because that is the amount provided for in a union contract it intends to sign with its

employees soon.  Def. Ex. 21-A at 16.  In the proposed contract, Calumet its

employees' union have agreed that maintenance payments for injured employees will

be fifteen dollars per day.  Def. Exs. 21 & 21-A at 16.  Calumet concedes that Lopez is

not bound by this agreement because he was not a member of the union at the time of

his injury.  *Ammar v. United States*, 342 F.3d 133, 145 (2d Cir. 2003).

Courts can consider union agreements on maintenance as evidence to

determine whether a given amount of maintenance is reasonable.  *Hall*, 242 F.3d at

587.  The contractual rate of maintenance is only evidence that fifteen dollars is a

reasonable rate; it provides little evidence that $29.20 a day is unreasonable.  *See*

*Barnes v. Andover Co., L.P.*, 900 F.2d 630, 640 (3d Cir. 1990) (holding that union

contract maintenance rate did not bind even union members who had higher actual

expenses); *Nichols*, 513 F. Supp. 2d at 639 (finding that thirty dollars per day was

reasonable for maintenance even though by contract defendant paid union employees

only twenty dollars per day).  In addition, the union contract is not particularly

compelling evidence of the reasonableness of the fifteen dollar rate, because the union

may have agreed to a low amount of maintenance that did not reflect reasonable

lodging and food costs in exchange for other concessions from Calumet.  *See Ammar*,

342 F.3d at 146–47 (holding that collective bargaining agreement maintenance rate of

eight dollars per day was binding in case involving a union member, even though it was

insufficient for food and lodging in New York, because union may have obtained other

concessions).

The Court concludes that Lopez has a reasonable likelihood of succeeding in

proving that he is entitled to maintenance at a rate of $29.20 per day.  Furthermore,

Lopez may suffer irreparable harm before final resolution of his claim if he is forced to

attempt to live on only half of his actual lodging and food costs.  Calumet does not

contend that it will suffer a greater degree of harm if the Court orders increased

maintenance.  Obviously Calumet will have to expend more money, but this is still less

than the amount it voluntarily paid Lopez in advance wages until February 2012.

Accordingly, the Court orders Calumet to increase its maintenance payments to Lopez

from fifteen dollars per day to $29.20 per day.

### Conclusion

For the reasons stated above, the Court grants Lopez's motion to reinstate

maintenance and cure in part and denies it in part [docket no. 13].  Specifically, the

Court orders Calumet to increase the amount of maintenance that it pays to Lopez to

$29.20 per day.  The Court otherwise denies the motion.


s/ Matthew F. Kennelly
MATTHEW F. KENNELLY
Date:  May 11, 2012                       United States District Judge